**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

**RICHARD A. BURTON**                                                    **PLAINTIFF**

**v.**                              **No. 4:11-cv-710 KGB**

**ARKANSAS SECRETARY OF STATE,**
**MARK MARTIN, In his Official Capacity as**
**ARKANSAS SECRETARY OF STATE,**
**DARRELL S. HEDDEN, In his Individual**
**and Official Capacity as Chief of Police for**
**STATE CAPITOL POLICE**                                             **DEFENDANTS**

## OPINION AND ORDER

Plaintiff Richard Burton brings this action under 42 U.S.C. § 2000e (Title VII of the Civil

Rights Act of 1964, as amended), 42 U.S.C. § 1983, and the Fourteenth Amendment to the

United States Constitution against his former employer, the Arkansas Secretary of State, in his

official capacity, and the Chief of the Arkansas State Capitol Police, Darrell Hedden, in his

individual and official capacity.  Mr. Burton alleges race discrimination and retaliation.  Mr.

Burton also brings this action under 28 U.S.C. § 2201 for declaratory judgment to declare the

rights and other legal relations between the parties.  Defendants seek summary judgment on Mr.

Burton's discrimination and retaliation claims, as well as his claim for punitive damages (Dkt.

No. 11).  For the reasons that follow, defendants' motion is granted in part and denied in part.

### I.    Factual Background

The following facts are undisputed unless stated otherwise.[1]  Mr. Burton was employed

by the Arkansas Secretary of State as a certified law enforcement officer with the State Capitol

Police from June 9, 2009 until he was terminated on April 12, 2010.  Prior to his employment

---

[1]  The undisputed facts are taken from defendants' statement of undisputed material facts
(Dkt. No. 13) and Mr. Burton's response to defendants' statement of undisputed material facts
(Dkt. No. 17), unless otherwise noted by specific citation.

with the State Capitol Police, Mr. Burton was employed by the Pine Bluff Police Department, where he served as a certified law enforcement officer for nearly four years.

During a meeting with Chief Hedden and Sergeant David Huggs regarding the position with the State Capitol Police, Chief Hedden informed Mr. Burton that he would be working the 3:00 p.m. to 11:00 p.m. shift with Norman Gomillion, Assistant Chief Theo Pierce, and Danny Winters, all Caucasians.  Chief Hedden warned that, if hired for the position, Mr. Burton might experience things he would consider to be racially offensive because the 3:00 p.m. to 11:00 p.m. shift was "full of rednecks."  Chief Hedden told Mr. Burton to come see him if there were any problems.

Cathy Bradshaw is the Deputy Secretary of State and is Chief Hedden's immediate supervisor.  Ms. Bradshaw has responsibility over housekeeping, police, and dispatch for the Secretary of State.  Robin Lang alleges that, when she was being interviewed by Ms. Bradshaw for a housekeeping position with the Secretary of State's Office, Ms. Bradshaw asked Ms. Lang in a low voice, "Do you have a problem working with blacks?"

Each person hired by the State Capitol Police is issued a State Capitol Police Policy and Procedures Manual and a Secretary of State Personnel Manual and is instructed to read both. The manuals contain, among other things, policies addressing complaint and appeal procedures and standards of conduct rules.  Mr. Burton acknowledged receipt of both manuals on June 5, 2009.  Per Secretary of State Policy, Mr. Burton was subject to a six-month probationary period. Mr. Burton was advised by Chief Hedden at the time of hire that his initial salary would be $37,500.00 per year and that, after successfully completing the six-month probationary period, he would receive a raise of $2,500.00.

On December 7, 2009, Chief Hedden made a request to Ms. Bradshaw that Mr. Burton receive a raise.  The written request acknowledged that Mr. Burton had successfully completed his six-month probationary period.

On December 8, 2009, Mr. Burton called Chief Hedden to report that Officer Gomillion had made racially offensive comments.  Mr. Burton told Chief Hedden that Officer Gomillion had referred to Mr. Burton and Randy Hitch, a housekeeper, as "n----rs" while speaking with Ms. Lang.  Mr. Burton alleges that Officer Gomillion would often use racial epithets when he was around Ms. Lang, letting it be known that he did not like African-Americans and that he felt whites were superior to blacks.  Ms. Lang and Mr. Burton worked the same shift and discussed these allegations.  When Officer Gomillion saw Ms. Lang with two African American males, Ms. Lang claims he asked her whether she did "that n----- thing?"  When Ms. Lang asked Officer Gomillion what he meant, she claims he said, "you don't do that n----- thing, you don't date n-----s, do you?"  Mr. Burton and Ms. Lang also claim Officer Gomillion referred to President Obama as "the n----- in the office, who is going to bring the United States down."  Ms. Lang maintains she often considered reporting Officer Gomillion, but she felt like she would be wasting her time.[2]

When Mr. Burton complained to Chief Hedden about Officer Gomillion, Chief Hedden told Mr. Burton to prepare a written complaint regarding Officer Gomillion's behavior.  On December 9, 2009, Mr. Burton submitted a handwritten complaint outlining the racially offensive comments made by Officer Gomillion, along with the statements of Ms. Lang, Mr. Hitch, and another employee, Misty Lane.  Chief Hedden told Mr. Burton at that time that Mr. Burton needed to type his complaint and resubmit it.  Mr. Burton did so.

---

[2]   The record evidence indicates Ms. Lang was terminated from her position with the Secretary of State sometime after her statement was submitted by Mr. Burton in support of his complaint against Officer Gomillion.

Chief Hedden read Mr. Burton's complaint and the witness statements and met with Officer Gomillion.  The record evidence does not indicate Chief Hedden took any other steps to investigate.  Officer Gomillion denied that he had made racially offensive comments and offered to take a polygraph test.  Chief Hedden issued Officer Gomillion a formal letter of counseling that racial comments would not be tolerated in any way and that termination was possible for any such future allegation that was substantiated.

Mr. Burton inquired about the status of his complaint against Officer Gomillion by email on January 22, 2010.  Chief Hedden claims he did not receive the email.  Chief Hedden inquired about the status of his request that Mr. Burton receive a raise on January 25, 2010.  The Secretary of State granted the raise requested by Chief Hedden on February 9, 2010.

On February 16, 2010, Mr. Burton informed Chief Hedden that Officer Gomillion had thrown a set of keys at Mr. Burton and another officer.  Mr. Burton submitted a statement regarding the incident to Sergeant Huggs on February 17, 2010.  Later, during a meeting with Assistant Chief Larry Robinson, Sergeant Huggs, and Officer Charlie Brice, who is also an African American, Mr. Burton was given a copy of the State Capitol Police at-will employment policy, was informed that anyone can be terminated at any time, and was told to read it, despite making clear he knew what the policy stated.  Assistant Chief Robinson then pointed to a purportedly new policy regarding bickering amongst the staff.  Mr. Burton asked Assistant Chief Robinson if he was referring to Officer Gomillion and again inquired about the status of his complaint.  According to Mr. Burton, Assistant Chief Robinson stated that "if ya'll would just leave [Officer Gomillion] alone and stop aggravating him, none of this stuff would be happening."

Mr. Burton worked a traffic accident on March 26, 2010.  Capitol Police Policy #2004-68 requires an officer to complete a traffic accident report before the end of the officer's shift.  Mr. Burton did not complete a traffic accident report before the end of his shift that day.  Mr. Burton claims he told Chief Hedden that Sergeant Huggs told him to hold off on preparing the report until Sergeant Huggs could show him how to input the report into the new computer system.  The individuals involved in the accident called several times over the next few days requesting copies of the accident report.  State law requires that all traffic accident reports be provided to the Arkansas State Police within five days.

Mr. Burton requested to work part-time, performing security for Lisenne Rockefeller, during the month of March 2010.  Chief Hedden approved Mr. Burton's request but cautioned Mr. Burton not to let his part-time work interfere with his full-time job.  Mr. Burton overslept on March 30, 2010 after having worked until 7 a.m. the night before for Lisenne Rockefeller.  Mr. Burton failed to inform the department in advance so that arrangements could be made for proper shift coverage, in violation of State Capitol Police Policy #2004-65.  In addition, Mr. Burton was found to be in violation of State Capitol Police Policy #2004-55 as a result of working off-duty all night.  Mr. Burton agrees that he should have been disciplined for reporting to work late.

Chief Hedden issued Mr. Burton a formal letter of reprimand on March 31, 2010.  In the letter of reprimand, Chief Hedden requested that Mr. Burton prepare a written memorandum within five days explaining his reasons for failing to complete the accident report in a timely manner and his reasons for failing to report to work as scheduled on March 30, 2010.  The letter advised Mr. Burton that any future violations of department policies or procedures could result in additional disciplinary actions, including termination of employment.  Mr. Burton did not provide the memorandum within five days as requested.

On April 7, 2010, Chief Hedden contacted Harmony Daniels by email to discuss whether Mr. Burton should be subjected to additional disciplinary action for failure to provide the memorandum.  Ms. Daniels informed Chief Hedden that Mr. Burton's failure to provide the memorandum within five days was a violation.  She advised Chief Hedden to remind Mr. Burton to submit the memorandum.  Chief Hedden claims he reminded Mr. Burton to submit the memorandum in an email and text message, but Mr. Burton disputes receiving either of those communications.

On April 9, 2010, Chief Hedden reported Mr. Burton's failure to provide the memorandum to Ms. Bradshaw and recommended that Mr. Burton's employment be terminated. The reasons for Chief Hedden's recommendation are set forth in an April 9, 2010 memorandum to Ms. Bradshaw:

> Because of Officer Burton's failure to follow policy and procedures that has led this department to issue an Official Letter of Reprimand, and because Officer Burton has willfully failed to follow the instruction and orders issued by supervisory personnel, he has failed to satisfactorily perform the duties of a police officer as required by this department.  With this type of action it is apparent to this department that Officer Burton has chosen and will not be able to complete the 12-month probationary period[3] satisfactorily.

Mr. Burton was terminated on April 12, 2010 for "fail[ing] to meet Commission 12 month probationary standards."  He did not appeal his termination to the Secretary of State.  Mr. Burton filed a charge of discrimination with the Equal Employment Opportunity Commission on April 14, 2010.

Chief Hedden became the chief of police in March 2003.  During Chief Hedden's tenure as chief and prior to Mr. Burton's termination, the only other officer who was terminated was

---

[3] The Arkansas Commission on Law Enforcement Standards requires all certified law enforcement officers to complete a 12-month probationary period.  Mr. Burton maintains that he completed this 12-month period while working at the Pine Bluff Police Department, while defendants maintain he was required to complete a 12-month probationary period with the State Capitol Police, as well.

another African American by the name of Sean Olive.  Mr. Olive was terminated because his landlord had a warrant issued for his arrest when he failed to vacate his apartment.  Mr. Burton contends that another officer by the name of Brett Stephens, a Caucasian, was given the option of resigning in lieu of termination when he was caught stealing from his part time job during Chief Hedden's tenure.

Mr. Burton points to Officer Gomillion as a potential comparator.  He identifies Robert Barham as a Caucasian employee who was treated differently for violating company policy regarding reporting to work on time.  Officer Barham reported to work nearly five hours late on November 6, 2008 after he overslept.  As a result of the incident, Officer Barham was issued a Letter of Counseling.  Officer Barham received a letter of reprimand for reporting to work one hour late on March 22, 2010, one and a half hours late on April 1, 2010, and 18 minutes late on April 14, 2010.  Officer Barham was late for work four additional times from August 2012 to October 2012.  With the exception of the November 6, 2008 incident, Officer Barham was never asked to provide a memorandum explaining his conduct, and the record evidence does not indicate he was terminated for his conduct.

Mr. Burton also points to James Wiley as a potential comparator.  The record indicates that Officer Wiley was involved in a verbal altercation with Chief Hedden and that he violated a direct order from Chief Hedden to leave the room.  The record evidence does not indicate he was terminated for his conduct.

## II.      Summary Judgment Standard

Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477

U.S. 317, 322 (1986).  The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact.  *Id.* at 323.  The burden then shifts to the non-moving party to establish by "specific facts" that there is a genuine issue for trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).  An issue of fact is material only if it could affect the outcome of the case under governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

"There is no 'discrimination case exception' to the application of summary judgment, which is a useful pretrial tool to determine whether any case, including one alleging discrimination, merits a trial."  *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011) (en banc). "Because summary judgment is not disfavored and is designed for 'every action,' panel statements to the contrary are unauthorized and should not be followed."  *Id.*

## III.    Claims Against Specific Defendants

Defendants raise several arguments regarding the propriety of Mr. Burton's claims as asserted against specific defendants.  The Court notes that the Court of Appeals for the Eighth Circuit holds, in the employment discrimination context, that the elements of Title VII claims, § 1983 equal protection claims, and § 1981 claims are the same.  *See, e.g., Humphries v. Pulaski County Special Sch. Dist.*, 580 F.3d 688, 692 n.3 (8th Cir. 2009) (addressing Title VII, § 1983, and § 1981 claims together and applying same standards).  The Court also notes that a Title VII claim of discrimination and a constitutional equal protection claim pursuant to § 1983 may both be asserted when the plaintiff alleges that separate rights—statutory on the one hand and constitutional on the other—have been violated.  *Mercer v. City of Cedar Rapids, Iowa*, 79 F. Supp. 2d 1055, 1062 (N.D. Iowa 1999).  Against this backdrop, the Court examines defendants' arguments.

### A. Sovereign Immunity

Defendants contend that Mr. Burton's § 1983 claims are barred by the Eleventh Amendment. The Eighth Circuit has "consistently held that Congress validly abrogated the Eleventh Amendment with the enactment of Title VII." *Warren v. Prejean*, 301 F.3d 893, 899 (8th Cir. 2002). However, Congress did not express a clear intention to abrogate state sovereign immunity with the enactment of 42 U.S.C. § 1983. *Quern v. Jordan*, 440 U.S. 332 (1979). Accordingly, Mr. Burton's § 1983 claims against the Arkansas Secretary of State are barred by the Eleventh Amendment. *See Murphy v. Arkansas*, 127 F.3d 750, 754 (8th Cir. 1997). Mr. Burton's § 1983 claims for monetary damages against Mark Martin and Chief Hedden in their official capacities are likewise barred, either under the Eleventh Amendment or because in these capacities they are not "persons" within the meaning of the statute. *Id.* Mr. Burton's official capacity claims for prospective injunctive relief and his claims for prospective injunctive relief and monetary damages against Chief Hedden in his individual capacity are not barred by the Eleventh Amendment.

### B. § 1981 Claims

Defendants correctly contend that to the extent Mr. Burton asserts claims under 42 U.S.C. § 1981, those claims should be dismissed. In *Singletary v. Missouri Department of Corrections*, 423 F.3d 886 (8th Cir. 2005), the Eighth Circuit held that a state is absolutely immune from suit under § 1981. In *Artis v. Francis Howell North Band Booster Associates*, 161 F.3d 1178 (8th Cir. 1998), the Eighth Circuit recognized that a § 1981 claim against a state actor must be asserted through § 1983. Therefore, defendants are entitled to summary judgment to the extent Mr. Burton asserts a claim under § 1981.

### C.      Claims Against Chief Hedden

Defendants argue that Chief Hedden is not liable under Title VII because he does not meet the definition of employer.  They also contend that Mr. Burton's claims for damages against Chief Hedden in his individual capacity are barred by qualified immunity.

### 1.      Liability under Title VII

Title VII defines an employer as "a person engaged in an industry affecting commerce who has fifteen or more employees . . . and any agent of such person . . . ."  42 U.S.C. § 2000e(b).  An individual qualifies as an "employer" under Title VII if he serves in a supervisory position and exercises significant control over the plaintiff's hiring, firing, or conditions of employment.  *See, e.g.*, *Garcia v. Elf Atochem North America*, 28 F.3d 446 (5th Cir. 1994); *Paronline v. Unisys Corp.*, 879 F.2d 100 (4th Cir. 1989).  Defendants contend that Chief Hedden does not meet this definition because the Secretary of State is the decision-maker regarding hiring, firing, and discipline of Secretary of State employees.  On this record, the Court finds that there is a genuine factual dispute as to whether Chief Hedden exercised sufficient control to qualify as an agent of an employer under Title VII.  Defendants' motion for summary judgment on this basis is denied.

### 2.      Qualified Immunity

The doctrine of qualified immunity "protects a government official 'from liability for civil damages insofar as the official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Stepnes v. Ritschel*, 663 F.3d 952, 960 (8th Cir. 2011).  "In a qualified immunity inquiry, the first question is:  Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's

conduct violated a constitutional right?"  *Wimbley v. Cashion*, 588 F.3d 959, 961 (8th Cir. 2009).

The second question is whether the right was clearly established.  *Id.* at 963

"There is no question that [Mr. Burton's] right to be free from racial . . . discrimination was well-established at the time of [his] termination."  *See id.*  "'The constitutional right to be free from [racial or gender] discrimination is so well established and so essential to the preservation of our constitutional order that all public officials must be charged with knowledge of it.'"  *Id.* (quoting *Goodwin v. Circuit Court of St. Louis County*, 729 F.2d 541, 546 (8th Cir.1984)).  For the reasons that follow, the Court determines that Mr. Burton's discrimination claims survive summary judgment.  Therefore, Chief Hedden is not entitled to qualified immunity.

## IV.     Race Discrimination and Retaliation Claims

Mr. Burton claims he was discriminated against on the basis of his race on numerous occasions while employed with the State Capitol Police.  He also claims he was terminated for reporting Officer Gomillion to Chief Hedden.

This Court analyzes Mr. Burton's race discrimination and retaliation claims under the burden-shifting framework of *McDonnell Douglas*.  *See Clegg v. Arkansas Dept. of Correction*, 496 F.3d 922 (8th Cir. 2007).  "Under this framework, the plaintiff bears the burden of establishing a *prima facie* case of discrimination."  *McGinnis v. Union Pac. R.R. Co.*, 496 F.3d 868, 873 (8th Cir. 2007).  If a plaintiff makes out a *prima facie* case, he creates a presumption of unlawful discrimination, and the burden shifts to the defendant to come forward with evidence of a legitimate nondiscriminatory reason for its actions.  *Id.*  "If the defendant articulates such a reason, the burden returns to the plaintiff to show the defendant's proffered reason is pretextual."  *Id.*

A.       **Race Discrimination**

To make out a *prima facie* case of race discrimination, a plaintiff must show that:  (1) he was a member of a protected class; (2) he was meeting the employer's legitimate job expectations; (3) he suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination.  *Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1019 (8th Cir. 2011). Defendants contend that Mr. Burton cannot satisfy the second, third and fourth elements of his *prima facie* case.  The Court will analyze each of these elements in turn.

As for the second element, defendants argue that Mr. Burton cannot prove that he was meeting the Secretary of State's legitimate job expectations.  According to defendants, Mr. Burton admitted that his failure to report to work as scheduled on March 30, 2010, and his failure to prepare timely an accident report were violations of company policy.  They view Mr. Burton's failure to prepare the requested memorandum as an act of insubordination.  *See Miner v. Bi-State Development Agency*, 943 F.2d 912 (8th Cir. 1991).

The Court finds that Mr. Burton has presented sufficient evidence to survive summary judgment on this element of his *prima facie* case.  Mr. Burton testified that a supervisor told him to hold off on preparing the accident report.  As for defendants' claim of insubordination, Mr. Burton points out that the letter of reprimand merely "requested" that he prepare a memorandum and points to other employees he claims were not required to prepare a memorandum or disciplined for failing to do so.  While Mr. Burton admits violating State Capitol Police policy by reporting to work late on March 30, 2010, material in the record indicates other State Capitol Police reported to work late and were not terminated for the offense.  The record, when viewed in a light most favorable to Mr. Burton, does not entitle defendants to summary judgment on this element.

Defendants argue that many of Mr. Burton's allegations of discrimination do not constitute adverse employment actions.  Mr. Burton's termination satisfies the third element of Mr. Burton's *prima facie* case.

"A plaintiff can satisfy the fourth part of the *prima facie* case in a variety of ways, such as by showing more-favorable treatment of similarly-situated employees who are not in the protected class, or biased comments by a decisionmaker." *Pye*, 641 F.3d at 1019 (citing *Lewis v. Heartland Inns of Am., L.L.C.*, 591 F.3d 1033, 1039-40 (8th Cir. 2010)).  The Eighth Circuit "has two lines of cases on the standard to determine whether employees are 'similarly situated' at the *prima facie* stage of the *McDonnell Douglas* test." *Id.* (quoting *Wimbley v. Cashion,* 588 F.3d 959, 962 (8th Cir. 2009)).  The first line of cases "sets a low threshold, requiring only that the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." *Id.* (quotation omitted).  The other line of cases "more rigorously requires that the employees be similarly situated in all respects." *Id.* (quotation omitted).

The Court has reviewed the record evidence relating to potential comparators Robert Barham and Norman Gomillion, both of whom are Caucasian.  The record establishes that Officer Barham was reprimanded numerous times for reporting to work late and for abusing sick leave but was requested to provide a written memorandum explaining his conduct only once. Mr. Burton also relies on James Wiley as a potential comparator; Officer Wiley is Caucasian. The record indicates that Officer Wiley was involved in a verbal altercation with Chief Hedden and that he violated a direct order from Chief Hedden to leave the room but was not terminated for his conduct.

The Court finds that Mr. Burton has demonstrated that Officer Barham and Officer Wiley were involved in or accused of the same or similar conduct and were disciplined in different

ways.  He has presented evidence sufficient to create a genuine dispute of material fact as to whether the facts alleged give rise to an inference of discrimination thereby establishing his *prima facie* case.

Because Mr. Burton has made out a *prima facie* case of discrimination, the burden shifts to defendants to show that there was a legitimate, nondiscriminatory reason for firing him.  "This burden is not onerous."  *Bone v. G4S Youth Servs., LLC*, 686 F.3d 948, 954 (8th Cir. 2012).  Courts do not "sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination."  *Id.* at 955 (quotation omitted).  Defendants need only proffer a good-faith reason for their action.  *Id.*

Defendants have submitted evidence that Mr. Burton failed, among other things, (1) to report to work as scheduled on March 30, 2010; (2) to inform his employer of his absence so that arrangements could be made for proper shift coverage; (3) to complete a traffic accident report before the end of his shift; and (4) to submit a written memorandum as requested by Chief Hedden.  These alleged violations of company policy constitute evidence of a legitimate, nondiscriminatory basis for Mr. Burton's termination.  *See Putnam v. Unity Health Sys.*, 348 F.3d 732, 736 (8th Cir. 2003) ("Our cases have repeatedly held that insubordination and violation of company policy are legitimate reasons for termination.").

Because defendants have carried their burden of articulating legitimate, nondiscriminatory reasons to terminate Mr. Burton, "the presumption of discrimination disappears," and the burden returns to Mr. Burton "to prove that the proffered justification is merely a pretext for discrimination."  *Id.*   "There are at least two ways a plaintiff may demonstrate a material question of fact regarding pretext."  *Torgerson v. City of Rochester*, 643

F.3d 1031, 1047 (8th Cir. 2011) (en banc).  First, "[a] plaintiff may show that the employer's explanation is unworthy of credence because it has no basis in fact.  Alternatively, a plaintiff may show pretext by persuading the court that a [prohibited] reason more likely motivated the employer."  *Id.*  In this sense, Mr. Burton's burden to of establishing pretext "merges with the ultimate burden of persuading the court that [he was] the victim of intentional discrimination." *Id*. at 1046.  As the Eighth Circuit has explained, "[p]roof of pretext, coupled with a strong *prima facie* case, may suffice to create a triable question of fact."  *Id.*

Mr. Burton relies on the same potential comparators to establish pretext.  "In determining whether a plaintiff has met his burden with respect to pretext in a summary judgment motion, a district court is prohibited from making a credibility judgment or a factual finding from conflicting evidence."  *Yates v. Rexton, Inc.*, 267 F.3d 793, 800 (8th Cir. 2001).

The Eighth Circuit has held that, "[a]t the pretext stage, the test for determining whether employees are similarly situated to a plaintiff is a rigorous one."  *Bone*, 686 F.3d at 956 (quotation omitted).  A plaintiff "must show that she and the employees outside of her protected group were similarly situated in all relevant respects."  *Id*.  The potential comparators "must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances."  *Id.*  Finally, "[t]o be probative evidence of pretext, the misconduct of more leniently disciplined employees must be of comparable seriousness."  *Id.*

At the pretext stage, it is Mr. Burton's burden of persuasion to demonstrate that the comparators identified are similarly situated in all relevant respects. *Twiggs v. Selig*, 679 F.3d 990, 993-94 (8th Cir. 2012).  The evidence, when viewed in the light most favorable to Mr. Burton, demonstrates that there is a genuine issue of material fact.  Mr. Burton has identified

Officer Barham as a Caucasian employee who repeatedly reported to work late.  While the November 6, 2008 incident involving Officer Barham is outside the relevant time period, Officer Barham reported to work late on three occasions during March and April 2010.  Officer Barham received a letter of reprimand, but unlike Mr. Burton, he was never asked by Chief Hedden to prepare a memorandum explaining his conduct.

Mr. Burton also points to James Wiley as a potential comparator.  The record indicates that Officer Wiley was involved in a verbal altercation with Chief Hedden and that he violated a direct order from Chief Hedden to leave the room.  Officer Wiley who is Caucasian was not disciplined for his actions, while Mr. Burton was accused of insubordination for failing to prepare a memorandum as requested.

The comparator evidence, taken together with other record evidence and the evidence establishing Mr. Burton's *prima facie* case, demonstrates that there is a genuine issue of material fact as to whether there is an inference of discrimination.  The role of the Court is to determine whether the non-moving party has produced evidence from which a jury could reasonably find in that party's favor.  Viewing the evidence in the light most favorable to Mr. Burton, a jury could reasonably find that defendants' asserted reasons for terminating Mr. Burton were a pretext for race discrimination.  This Court concludes defendants are not entitled to summary judgment on Mr. Burton's race discrimination claim.

### B.     Retaliation Claim

Mr. Burton claims he was terminated in retaliation for reporting Officer Gomillion's alleged racially offensive statements to Chief Hedden.

"Title VII's anti-retaliation provision prevents employers from retaliating against employees who have acted to vindicate their statutorily protected rights by reporting harassment

or discrimination in the workplace." *Gibson v. American Greeting Corp.*, 670 F.3d 844, 856 (8th Cir. 2012).  To make out a *prima facie* case of retaliation, a plaintiff must show that:  (1) he is engaged in statutorily protected activity; (2) he suffered an adverse employment action; and (3) there was a causal connection between the adverse employment action and the protected activity. *Smith v. Riceland Foods, Inc.*, 151 F.3d 813, 818 (8th Cir. 1998).

Defendants argue that there is no evidence of a causal connection between Mr. Burton's actions and his termination.  Defendants note that Mr. Burton was terminated four months after he reported Officer Gomillion to Chief Hedden.  Generally, more than temporal connection is required to establish a causal connection.  *Tyler v. University of Arkansas Bd. of Trustees*, 628 F.3d 980, 985 (8th Cir. 2011).  "As more time passes between the protected conduct and the retaliatory act, the inference of retaliation becomes weaker and requires stronger alternate evidence of causation . . . ." *Id.*  "The inference vanishes altogether when the time gap between the protected activity and the adverse employment action is measured in months." *Id.*; *see, e.g.*, *Littleton v. Pilot Travel Ctrs., LLC*, 568 F.3d 641 (8th Cir. 2009) (holding that gap of seven months was not sufficiently contemporaneous to indicate a causal connection); *Recio v. Creighton Univ.*, 521 F.3d 934 (8th Cir. 2008) (holding that six month gap did not establish causal connection).  The Eighth Circuit has determined that a gap as short as two months did not establish a causal connection.  *Lewis v. St. Cloud State Univ.*, 467 F.3d 1133 (8th Cir. 2006).

Mr. Burton submitted his written complaint on December 9, 2009.  He was terminated on April 12, 2010.  While the inference of retaliation is weakened by this gap in time, there is other evidence from which a jury could find a causal connection.  Mr. Burton inquired about the status of his complaint on January 22, 2010.  Chief Hedden claims he did not receive the email, but he inquired about the status of Mr. Burton's raise just three days later.  On February 16, 2010, Mr.

Burton informed Chief Hedden that Officer Gomillion had thrown a set of keys at Mr. Burton and another officer.  Mr. Burton submitted a statement regarding the incident to Sergeant Huggs on February 17, 2010.   Later, during a meeting with Assistant Chief Larry Robinson and others, Mr. Burton again inquired about the status of his complaint against Officer Gomillion.   During the meeting, Assistant Chief Robinson gave Mr. Burton a copy of the policy regarding at-will employees, told him anyone can be terminated at any time, and told him to read it, despite Mr. Burton's making clear he knew what the policy stated.  Assistant Chief Robinson then pointed to a purportedly new policy regarding bickering amongst the staff.  Mr. Burton asked Assistant Chief Robinson if he was referring to Officer Gomillion and again inquired about the status of his complaint.  According to Mr. Burton, Assistant Chief Robinson stated that "if ya'll would just leave [Officer Gomillion] alone and stop aggravating him, none of this stuff would be happening."  Mr. Burton was terminated a few weeks later.

Mr. Burton has presented evidence sufficient to create a genuine dispute of material fact as to whether the facts alleged give rise to retaliatory discharge.  A jury could reasonably find in favor of Mr. Burton on this claim.  Defendants' request for summary judgment on the retaliation claim is denied.

### V.     Other Claims

Defendants argue that to the extent Mr. Burton alleges he was subjected to a hostile work environment or suffered a deprivation of a protected property or liberty interest, defendants are entitled to summary judgment on such claims.   Mr. Burton does not respond directly to defendants' arguments relating to these claims.   In regard to the procedural due process claim, Mr. Burton does not contest defendants' arguments that Mr. Burton was an at-will employee not entitled to notice or an opportunity to be heard and that Mr. Burton failed to exhaust his post-

termination administrative remedies under state law by not appealing his termination.  *Allen v. City of Pocahontas*, 340 F.3d 551 (8th Cir. 2003) (holding that at-will employee did not have a protected property interest in continued employment under Arkansas law); *Keating v. Nebraska Pub. Power Dist.*, 562 F.3d 923, 929 (8th Cir. 2009) ("Under federal law, a litigant asserting a deprivation of procedural due process must exhaust state remedies before such an allegation states a claim under § 1983.").

In regard to the hostile work environment claim, Mr. Burton does not contest defendants' arguments that he cannot show he was subjected to unwelcome harassment and that the Secretary of State took prompt remedial action to address Mr. Burton's complaint.  *Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1018 (8th Cir. 2011) (stating elements of *prima facie* case of hostile work environment); *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998) (stating elements of remedial action defense).

Mr. Burton has not established the existence of genuine issues of material fact sufficient to survive summary judgment on these claims.

## VI.    Mitigation of Damages

Defendants contend that Mr. Burton cannot recover damages because he did not appeal his termination to the Secretary of State.  Defendants cite no controlling authority on this issue, and the Court is not aware of any.  Moreover, defendants acknowledge that Mr. Burton's failure to avail himself of Secretary of State's appeal process does not present a jurisdictional issue.  For these reasons, they are not entitled to summary judgment on this issue.

## VII.    Punitive Damages

Finally, defendants contend that Mr. Burton is not entitled to an award of punitive damages.

The standard for an award of punitive damages under Title VII is set forth in *Dominic v.*

*DeVilbiss Air Power Co.*, 493 F.3d 968 (8th Cir. 2007):

> Punitive damages are appropriate for victims of Title VII if the plaintiff has shown that the employer engaged in intentional discrimination and acted with malice or with reckless indifference to the plaintiff's federally protected rights. Malice and reckless indifference can be shown by demonstrating that an employer discriminated in the face of a perceived risk that its actions will violate federal law. This standard refers to the employer's state of mind regarding its knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination. Even if the plaintiff can show that individuals in the company demonstrated the requisite intent, punitive damages are only appropriate if such intent can be imputed to the employer. When an employer promptly and conscientiously responds to complaints of harassment or discrimination with good faith efforts, punitive damages are not warranted.

On this record, the Court cannot say that no reasonable jury could find that defendants acted with malice or with reckless indifference to plaintiff's federally protected rights. Accordingly, defendants are not entitled to summary judgment on this basis.

## VIII.   Conclusion

For these reasons, defendants' motion for summary judgment is granted in part and denied in part. Defendants' motion is denied as to Mr. Burton's race and retaliation claims. Mr. Burton may pursue his Title VII claims against all defendants. Mr. Burton's § 1983 claims against the Arkansas Secretary of State are barred by the Eleventh Amendment, and his § 1983 claims for monetary damages against Mark Martin and Chief Hedden in their official capacities are likewise barred. Mr. Burton may pursue his § 1983 claims for prospective injunctive relief and his § 1983 claims for monetary damages against Chief Hedden in his individual capacity. Chief Hedden is not entitled to qualified immunity. Defendants are not entitled to summary judgment as to mitigation of damages or as to punitive damages. Defendants' motion for summary judgment is granted as to Mr. Burton's § 1981 claims, hostile work environment claim,

and as to Mr. Burton's claim that he suffered a deprivation of a protected property or liberty interest.

SO ORDERED this 16th day of February, 2013.

_____
Kristine G. Baker
United States District Judge