**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

**RICHARD A. BURTON**                                                        **PLAINTIFF**

**v.**                                **Case No. 4:11-cv-00710 KGB**

**ARKANSAS SECRETARY OF STATE,**
**MARK MARTIN, In his Official Capacity as**
**ARKANSAS SECRETARY OF STATE,**
**DARRELL S. HEDDEN, In his Individual**
**and Official Capacity as Chief of Police for**
**STATE CAPITOL POLICE**                                               **DEFENDANTS**

## OPINION AND ORDER

Before the Court is defendants' second motion for summary judgment (Dkt. No. 78), to which plaintiff Richard Burton has responded (Dkt. No. 83). Defendants have replied to Mr. Burton's response (Dkt. No. 85).

Mr. Burton brings this action under 42 U.S.C. § 2000e (Title VII of the Civil Rights Act of 1964, as amended), 42 U.S.C. § 1983, and the Fourteenth Amendment to the United States Constitution against his former employer, the Arkansas Secretary of State, in his official capacity, and the Chief of the Arkansas State Capitol Police, Darrell Hedden, in his individual and official capacity. Mr. Burton alleges race discrimination and retaliation. Mr. Burton also brings this action under 28 U.S.C. § 2201 for declaratory judgment to declare the rights and other legal relations between the parties.

### I.       Procedural Background

In its February 16, 2013, Opinion and Order (Dkt. No. 46), this Court granted in part and denied in part defendants' first motion for summary judgment. Specifically, the Court denied defendants' first motion for summary judgment on Mr. Burton's race discrimination and retaliation claims, concluding that Mr. Burton could pursue his Title VII claims against all

defendants but that the Eleventh Amendment barred his § 1983 claims against the Arkansas Secretary of State and his claims for monetary damages against the Secretary of State and Chief Hedden in their official capacities.  The Court also denied Chief Hedden qualified immunity, finding that Mr. Burton could pursue his § 1983 claims for prospective injunctive relief and monetary damages against Chief Hedden in his individual capacity.  Further, the Court denied defendants' first motion for summary judgment as to damages.  The Court granted summary judgment to defendants on Mr. Burton's claims under 42 U.S.C. § 1981, his hostile-work environment claim, and his claim of deprivation of a protected property or liberty interest.

Defendants appealed this Court's Opinion and Order to the Eighth Circuit Court of Appeals, seeking review of this Court's denial of summary judgment as to Chief Hedden's asserted qualified immunity over Mr. Burton's § 1983 claims for race discrimination and retaliation and the Court's denial of summary judgment as to Mr. Burton's Title VII claims.  On December 17, 2013, the Eighth Circuit affirmed this Court's decision in all respects, except that it reversed the denial of qualified immunity to Chief Hedden on Mr. Burton's § 1983 equal-protection claim of retaliation and declined to review the Title VII retaliation claim (Dkt. No. 67).  Defendants petitioned the Eighth Circuit for rehearing *en banc*, and the Eighth Circuit denied the petition on January 30, 2014 (App. Case No. 13-1427).  This Court entered an Order consistent with the Eighth Circuit's determination and granted Chief Hedden qualified immunity on Mr. Burton's § 1983 equal-protection claim of retaliation (Dkt. No. 70).

In their second motion for summary judgment, defendants argue for a second time that they are entitled to summary judgment on Mr. Burton's discrimination and retaliation claims, that Chief Hedden is entitled to qualified immunity from suit in this matter, and that defendants

are entitled to summary judgment on the issues that remain in this case.  For the following reasons, the Court denies defendants' second motion for summary judgment**.**

## II.      Factual Background

When filing their second motion for summary judgment, defendants requested, and the Court granted, permission for defendants to incorporate by reference the statement of material facts not in dispute that defendants filed in support of their first motion for summary judgment (Dkt. Nos. 80, 82).  Mr. Burton, for his response to defendants' second motion for summary judgment, requests that his previously submitted response to defendants' statement of undisputed facts be incorporated into his response to defendants' second motion for summary judgment as stated word for word (Dkt. No. 83, ¶ 12).  The Court grants Mr. Burton's request.  Because all parties agree that the factual background and record evidence remain unchanged and because the Court set out in detail the factual background in its Opinion and Order granting in part and denying in part defendants' first motion for summary judgment (Dkt. No. 46), the Court will not repeat the factual background here.

Despite this, defendants filed in support of their second motion for summary judgment a declaration of Chief Hedden initially submitted in another case, *Van Horn v. Martin, et al.*, Case No. 5:13-cv-0074 DPM.  This declaration was not filed with defendants' first motion for summary judgment.  The declaration relates to Yevonne Van Horn and her employment discrimination claims, not to Mr. Burton.  In part, the declaration provides information about certain policies that Secretary of State Mark Martin implemented on November 7, 2011, regarding officers' firearm qualifications.

## III.      Standard

Summary judgment is proper if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and that the defendant

is entitled to entry of judgment as a matter of law.  Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A factual dispute is genuine if the evidence could cause a reasonable jury to return a verdict for either party.  *Miner v. Local 373*, 513 F.3d 854, 860 (8th Cir. 2008).  "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under the prevailing law." *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989).  The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact.  *Celotex Corp.*, 477 U.S. at 323.  The burden then shifts to the nonmoving party to establish that there is a genuine issue to be determined at trial. *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 2008).  "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  "There is no 'discrimination case exception' to the application of summary judgment, which is a useful pretrial tool to determine whether any case, including one alleging discrimination, merits a trial." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011) (en banc).

## IV.    Discussion

Despite the Eighth Circuit's decision affirming this Court's prior Opinion and Order in nearly all respects and despite all parties agreeing that the factual record remains unchanged, defendants argue that this Court should grant their second motion for summary judgment as to Mr. Burton's claims of race discrimination under Title VII, § 1983, and the Fourteenth Amendment and as to Mr. Burton's claims of retaliation under Title VII.  Chief Hedden also asserts again the defense of qualified immunity as to Mr. Burton's claims of race discrimination under § 1983 and the Fourteenth Amendment.  Specifically, defendants contend that the Eighth Circuit's decision in *Johnson v. Securitas Security Services*, 769 F.3d 605 (8th Cir. 2014),

supersedes the Eighth Circuit's decision in this case.  Furthermore, defendants argue that this Court should reconsider its previous decision on Mr. Burton's retaliation claims because of the United States Supreme Court's subsequent decision in *University of Texas Southwestern Medical Center v. Nassar*, 133 S. Ct. 2517 (2013).  Mr. Burton contends, among other things, that this Court and the Eighth Circuit's previous decisions in this case established the law of the case, barring consideration of defendants' second motion for summary judgment on the same issues.[1] The Court addresses the parties' arguments below.

### A.    Law Of The Case

The law of the case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Christianson v. Colt Inds. Operating Corp.*, 486 U.S. 800, 816 (1988).  "This doctrine 'requires courts to adhere to decisions made in earlier proceedings in order to ensure uniformity of decisions, protect the expectations of the parties, and promote judicial economy.'"  *Murphy v. FedEx Nat. L TL, Inc.*, 618 F.3d 893, 905 (2010) (quoting *United States v. Bartsh*, 69 F.3d 864, 866 (8th Cir. 1995)).  Courts apply the law of the case doctrine differently depending on the context of each case.  *Bethmers Mfg. Co., Inc. v. Automatic Equip. Mfg. Co.*, 299 F. Supp. 2d 903, 911 (N.D. Iowa 2004) (citing *Jamesbury Corp. v. Litton Indus. Prods., Inc.*, 839 F.2d 1544, 1550 (Fed. Cir. 1988), *cert. denied*, 488 U.S. 828, *overruled on other grounds*, A.C. Aukerman Co. v. R.L. Chaides Constr. Co., 960 F.2d 1020 (Fed. Cir. 1992)).

When a district court has denied summary judgment without intervening authority, "the law of the case is not a limit on the court's jurisdiction, but a rule of practice which may be

---

[1] Mr. Burton alternatively argues that the doctrine of collateral estoppel precludes defendants from re-litigating in their second motion for summary judgment the issues already decided by this Court and the Eighth Circuit.  Because this Court decides defendants' second motion for summary judgment under the law of the case doctrine, it need not address Mr. Burton's argument concerning collateral estoppel.

departed from in the sound discretion of the district court." *Jamesbury Corp.*, 839 F.2d at 1551. Accordingly, the law of the case doctrine does not apply to interlocutory orders such as a district court's denial of summary judgment. *Murphy*, 618 F.3d at 905. However, a stricter standard for reconsideration applies after appellate review. *Dethmers Mfg. Co.*, 299 F. Supp. 2d at 912. This stricter standard is articulated in the "mandate rule": "inferior tribunals are bound to honor the mandate of superior courts within a single judicial system." *Bartsh*, 69 F.3d at 866. "If there are no explicit or implicit instructions to hold further proceedings [on remand], a district court has no authority to re-examine an issue settled by a higher court. When an appellate court remands a case to the district court, all issues decided by the appellate court become the law of the case . . . ." *Id.* (internal quotes and citations omitted).

Courts have applied three exceptions to the mandate rule. *See U.S. v. Winters*, 600 F.3d 963, 965 (8th Cir. 2010). First, if final judgment has not been entered, a court may depart from a higher court's mandate "when events outside the particular action establish a clear change in controlling law." 18B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 4478.3; *Winters*, 600 F.3d at 965. For example, the rule does "not apply when the earlier [appellate] panel decision is cast into doubt by a decision of the Supreme Court." *U.S. v. Steward*, 598 F.3d 960, 962 (8th Cir. 2010) (internal quotes omitted). This exception seems to hold true if the appellate court *en banc* overrules an earlier decision by a panel. *Cf. Jackson v. Ault*, 452 F.3d 734, 736 (8th Cir. 2006). Second, a lower court may also depart from the "mandate rule" when a party presents "'substantially different' evidence on remand." *Bartsh*, 69 F.3d at 866. The third exception arises if the prior appellate decision was "clearly erroneous and works manifest injustice." *Id.* In any case, for a lower court to depart from the mandate rule,

"the circumstances must be clear and compelling" 18B Wright & Miller, § 4478.3; *see Winters*, 600 F.3d. at 965-66 (citing 18B Wright & Miller, § 4478.3).

Here, defendants seek an exception to the mandate rule, contending that the Eighth Circuit's *en banc* decision in *Johnson* supersedes its prior panel decision in this case over Mr. Burton's race discrimination claims and Officer Hedden's qualified immunity defense to those claims. Defendants also argue that this Court should reconsider its denial of defendants' first motion for summary judgment as to Mr. Burton's retaliation claims in wake of the Supreme Court's decision in *Nassar*.

**1. Race Discrimination Claims**

Defendants do not challenge this Court's prior findings that Mr. Burton presented a *prima facie* case of discrimination and that defendants have carried their burden of articulating legitimate, nondiscriminatory reasons for terminating Mr. Burton. *Bone v. G4S Youth Servs., LLC*, 686 F.3d 948, 954 (8th Cir. 2012). The Eighth Circuit assumed without deciding that Mr. Burton presented a *prima facie* case, and Mr. Burton did not challenge on appeal this Court's determination that defendants articulated a non-discriminatory, legitimate justification for terminating Mr. Burton (Dkt. No. 67, at 13).

Instead, as to Mr. Burton's race discrimination claims, defendants focus their argument on the pretext analysis. Because defendants have carried their burden of articulating legitimate, nondiscriminatory reasons to terminate Mr. Burton, the burden returns to Mr. Burton "to prove that the proffered justification is merely a pretext for discrimination." *Id.* Mr. Burton relies on potential comparators to establish pretext.

In an effort to support their second motion for summary judgment on Mr. Burton's race discrimination claims, defendants assert that "[o]n October 7, 2014, the Eighth Circuit Court of

Appeals, sitting *en banc*, issued an opinion which affects and supersedes the prior decisions entered in this case" and cite *Johnson v. Securitas Security Services*, 769 F.3d 605 (8th Cir. 2014) (en banc) (Dkt. No. 78, ¶ 5).  Defendants claim that "[t]he Eighth Circuit's comparator analysis in *Burton v. Martin* erroneously relied upon an expanded comparison to co-workers who were 'substantially similar,' and not 'clones,' rather than requiring violations of the same conduct, under the same standards, and under the same supervisor, as is now required by *Johnson*. . . ." (Dkt. No. 79, at 1).  Defendants contend that, under this purportedly new *Johnson* standard, Mr. Burton's race discrimination claims fail.  The Court rejects these arguments. *Johnson* does not establish a clear change in the controlling law that would enable this Court to revisit the Eighth Circuit's decision affirming this Court's denial of defendants' motion for summary judgment on Mr. Burton's race discrimination claims.

In *Johnson*, the Eighth Circuit held that an employee failed to show that he was treated differently from similarly situated employees because he did not provide evidence of younger employees who engaged in the same conduct as the plaintiff but who received more lenient discipline.  769 F.3d at 613.  Therefore, the court determined that the mere fact that the employer had not fired any other employee for the reasons it fired the plaintiff did not suffice to raise a genuine question of material fact regarding whether the employer treated the plaintiff differently than other employees.  *Id.*  In reaching its decision, the *Johnson* court repeated the often cited Eighth Circuit law on the standard for proving that a potential comparator is similarly situated to the plaintiff:  "'the test for whether someone is sufficiently similarly situated, as to be of use for comparison, is rigorous,'" *id.* (quoting *Bone*, 686 F.3d at 956); a plaintiff "'must show that [he] and the employees outside of [his] protected group were similarly situated in all relevant respects,'" *id.* (quoting *Bone*, 686 F.3d at 956); "'individuals used for comparison must have

dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances.'"   *Id.* (quoting *Bone*, 686 F.3d at 956).

*Johnson* did not explicitly, and this Court rejects defendants' argument that it implicitly, overruled the Eighth Circuit's decision in this case, this Court's February 16, 2013, Opinion and Order, or the precedent cited by both the Eighth Circuit and this Court in reaching its decisions here.   The *Johnson* court relied on and quoted heavily from *Bone v. G4S Youth Services, LLC*, 686 F.3d 948, 954 (8th Cir. 2012).   The *Bone* decision guided this Court's prior determination regarding defendants' first motion for summary judgment (*see* Dkt. No. 46, at 15).   Furthermore, in *Bone*, the court stated that, "[t]o be probative evidence of pretext, the misconduct of more leniently disciplined employees must be of comparable seriousness."   686 F.3d at 956.

Nothing in *Johnson* or *Bone* is inconsistent with the opinions handed down in this case. The Eighth Circuit determined that Mr. Burton presented evidence at the pretext stage of at least one similarly situated coworker, Officer Robert Barham, a Caucasian employee.   737 F.3d at 1232.   The Eighth Circuit concluded that Officer Barham and Mr. Burton were subject to the same standards and that Mr. Burton established that he was treated differently than Officer Barham, "whose violations were of *comparable seriousness*."   *Id.* at 1233.   In reaching this decision, the Eighth Circuit observed that defendants did not dispute that Mr. Burton and Officer Barham worked under the same supervisor, Chief Hedden.   Based on the unchanged record evidence, the parties dispute whether Mr. Burton was a probationary employee at the time of his termination.   Nonetheless, the Eighth Circuit addressed this dispute and assumed, without deciding, that Mr. Burton was a probationary employee when he was terminated.   Thus, the Eighth Circuit determined that Officer Barham was similarly situated to Mr. Burton during the

period in which Officer Barham was placed on a "six-month probationary period" and issued a letter of reprimand for, among other things, being late for work on four different occasions. *Id.*

Defendants' remaining arguments directed at Mr. Burton's discrimination claims are, in a sense, requests for this Court to reconsider, and declare wrong, the Eighth Circuit's analysis of the law, record evidence, and arguments made by the parties during the interlocutory appeal. The Court is unclear why it should permit defendants to make new arguments or renew arguments, not dependent on a change in the law, when those arguments were available but not presented, or presented unconvincingly, to this Court and the Eighth Circuit in support of defendants' first motion for summary judgment.

For example, defendants contend that, as an officer placed on probation in 2012, Officer Barham was under a different standard than was Mr. Burton, who was a new probationary employee. The Eighth Circuit explicitly "conclude[d] that Burton and Officer Barham were subject to the same standards." 737 F.3d at 1232 (internal quotes omitted). The Eighth Circuit either rejected this argument which defendants now advance or defendants failed to make it on the interlocutory appeal. Moreover, defendants offer no new or substantially different evidence to support their argument, nor do they point to any intervening and controlling law that finds probationary employees are subject to a different standard than employees who are on probation. Defendants offer nothing to show that the Eighth Circuit's decision was clearly erroneous, and they do not contend that the Eighth Circuit's decision somehow works a manifest injustice. Therefore, the mandate rule dictates that this Court reject defendants' argument.

Furthermore, defendants claim that the Eighth Circuit failed to consider that "Chief Hedden's supervision had changed when Secretary Martin was elected" and during the time that Officer Barham was placed on probation (Dkt. No. 79, at 6). For this, defendants cite to Chief

Hedden's declaration from another case not presented to this Court or the Eighth Circuit with defendants' first motion for summary judgment and contend that "Secretary Martin changed the standards under which Chief Hedden, and the Capitol Police operated" and that "Secretary Martin was the relevant supervisor for purposes of the comparator analysis as Barham was placed on suspension arising from changes made by Secretary Martin in the firearms qualifications process" (Dkt. No. 79, at 6).  The Court rejects defendants' argument for many reasons.

As an initial matter, the Court is unclear why it should now permit defendants to inject new evidence in the form of Chief Hedden's declaration from another case into what all parties agree is a settled summary judgment record, especially given that the information contained in the declaration was readily available to defendants but absent from the filings in their first motion for summary judgment.  Defendants provide no justification and cite to no authority for doing so.  Even if this Court were inclined to consider Chief Hedden's new declaration or defendants' new arguments that Secretary Martin's changed policies affected the fact that Chief Hedden was Officer Barham's direct supervisor, the Court's decision would remain unchanged, as this evidence is not substantially different from that in the already agreed upon record.  The record evidence, with all reasonable inferences drawn in favor of the non-moving party, shows that Chief Hedden remained Officer Barham's direct supervisor.  Chief Hedden signed and delivered the letter that informed Officer Barham of his placement on probation on June 28, 2012 (Dkt. No. 18-7, at 18).  Most notably, however, the Eighth Circuit specifically noted that "the state defendants do not contest that Chief Hedden served as the supervisor to both Burton and Officer Barham."  737 F.3d at 1232.  Defendants' belated attempt to dispute this issue fails.

Under the standard set out in *Bone*—and reaffirmed in *Johnson*—this Court found as set forth in its February 16, 2013, Opinion and Order that Mr. Burton's comparator evidence, taken together with other record evidence and the strong evidence establishing Mr. Burton's *prima facie* case, demonstrates a genuine issue of material fact regarding an inference of discrimination. The Eighth Circuit's decision in *Burton v. Arkansas Secretary of State*, 737 F.3d 1219 (8th Cir. 2013), affirmed that and is consistent with *Johnson*. Moreover, defendants have offered no new and substantially different evidence to overcome the Eighth Circuit's decision in this case, nor have they shown how the Eighth Circuit's decision is erroneous or works a manifest injustice. Accordingly, directed by the law of the case doctrine and the mandate rule, and for the reasons set out in this Order, the Court denies defendants' second motion for summary judgment as to Mr. Burton's claims of race discrimination. Chief Hedden is not entitled to qualified immunity as to Mr. Burton's claims of race discrimination.

### 2.  Title VII Retaliation Claims

Defendants contend that this Court should reconsider its denial of defendants' first motion for summary judgment as to Mr. Burton's retaliation claims in wake of the Supreme Court's decision in *University of Texas Southwestern Medical Center v. Nassar*, 133 S. Ct. 2517 (2013).

Mr. Burton alleges that defendants violated Title VII by terminating him in retaliation for filing a complaint against Officer Gomillion. For a plaintiff to demonstrate a *prima facie* case of retaliation under Title VII, he must show (1) that he was engaged in protected activity; (2) that he suffered a materially adverse employment action; and (3) that the materially adverse action was causally connected to the protected activity. *Smith v. Riceland Foods, Inc.*, 151 F.3d 813, 818

(8th Cir. 1998).  Defendants argue that there is no evidence of a causal connection between Mr. Burton's filing of a complaint against Officer Gomillion and his termination.

In its February 16, 2013, Opinion and Order, this Court held that Mr. Burton presented sufficient evidence for a jury to find a causal connection between Mr. Burton's termination and his filing of a complaint alleging that Officer Gomillion made racially offensive remarks.  The Eighth Circuit's decision in this case did not address Mr. Burton's claims of retaliation under Title VII because its resolution of the qualified immunity issue as to Mr. Burton's race discrimination claims did not necessarily involve his retaliation claim.

In an effort to support their second motion for summary judgment as to Mr. Burton's retaliation claim on a factual record that remains unchanged, defendants assert that "[s]ubsequent to this Court's entry of its Order on Defendant's Motion for Summary Judgment, the United States Supreme Court held that retaliation claims must be proved according to the traditional principals of but-for causation," citing *Nassar*, and contend that Mr. Burton is unable to meet this standard of proof (Dkt. No. 78, ¶ 6).  Mr. Burton did not address directly this argument in his response to defendants' second motion for summary judgment.

The Supreme Court decided *Nassar* on June 24, 2013, holding that "Title VII retaliation claims must be proved according to traditional principles of but-for causation, not the lessened causation test stated in § 2000e-2(m).  This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer."  133 S. Ct. at 2533.  The Eighth Circuit has followed this rule in *Nassar*, *see Musolf v. J.C. Penney Co., Inc.*, 773 F.3d 916, 919 (8th Cir. 2014), as have the courts in this district.  *Nichols v. Tri-National Logistics Inc.*, Case No. 4:13-cv-124-SWW, 2014 WL 4165321, at *7 (E.D. Ark. August 21,

2014). Accordingly, to prevail on his retaliation claim under Title VII, Mr. Burton must prove that his filing of a complaint against Officer Gomillion was the but-for cause of his termination.

Defendants contend that, to prove but-for causation, "a plaintiff must prove that the legitimate business reason articulated by the defendant is false and that retaliation is the real reason." (Dkt. 79, at 2). Defendants further maintain that, because Mr. Burton admits to misconduct and does not dispute that he should have been disciplined for his conduct, "it is impossible for him to meet the 'but-for' causation requirements set forth in *Nassar*" (Dkt. No. 79, at 2). On the record evidence before the Court, the Court rejects defendants' argument. Generally, more than temporal connection is required to establish a causal connection. *Tyler v. University of Arkansas Bd. of Trustees*, 628 F.3d 980, 985 (8th Cir. 2011). "As more time passes between the protected conduct and the retaliatory act, the inference of retaliation becomes weaker and requires stronger alternate evidence of causation . . . ." *Id.* "The inference vanishes altogether when the time gap between the protected activity and the adverse employment action is measured in months." *Id.*; *see, e.g.*, *Littleton v. Pilot Travel Ctrs., LLC*, 568 F.3d 641 (8th Cir. 2009) (holding that gap of seven months was not sufficiently contemporaneous to indicate a causal connection); *Recio v. Creighton Univ.*, 521 F.3d 934 (8th Cir. 2008) (holding that six month gap did not establish causal connection). The Eighth Circuit has determined that a gap as short as two months did not establish a causal connection. *Lewis v. St. Cloud State Univ.*, 467 F.3d 1133 (8th Cir. 2006). Furthermore, the Eighth Circuit has held that an employee's inquiry to the employer about the employee's earlier complaints relates back to the date of the original complaint and does not raise a new complaint for calculating the temporal proximity between the adverse action and the protected activity. *Musolf*, 773 F.3d at 919-20. This rule prevents

employees from insulating themselves from termination by inquiring about past complaints directly before being terminated. *Id.*

Mr. Burton submitted his written complaint on December 9, 2009. He was terminated on April 12, 2010. While the inference of retaliation is weakened by this gap in time, there is other evidence from which a jury could find a but-for causal connection. Mr. Burton inquired about the status of his complaint on January 22, 2010. Chief Hedden claims he did not receive the email, but he inquired about the status of Mr. Burton's raise just three days later. On February 16, 2010, Mr. Burton informed Chief Hedden that Officer Gomillion had thrown a set of keys at Mr. Burton and another officer. Mr. Burton submitted a statement regarding the incident to Sergeant Huggs on February 17, 2010. Later, during a meeting with Assistant Chief Larry Robinson and others, Mr. Burton again inquired about the status of his complaint against Officer Gomillion. During the meeting, Assistant Chief Robinson gave Mr. Burton a copy of the policy regarding at-will employees, told him anyone can be terminated at any time, and told him to read it, despite Mr. Burton's making clear he knew what the policy stated. Assistant Chief Robinson then pointed to a purportedly new policy regarding bickering amongst the staff. Mr. Burton asked Assistant Chief Robinson if he was referring to Officer Gomillion and again inquired about the status of his complaint. According to Mr. Burton, Assistant Chief Robinson stated that "if ya'll would just leave [Officer Gomillion] alone and stop aggravating him, none of this stuff would be happening." Mr. Burton was terminated a few weeks later.

Although an employee's inquiry to the employer about the employee's earlier complaint does not raise by itself a new complaint for calculating the temporal proximity between the adverse action and the protected activity, *Musolf*, 773 F.3d at 919-20, no record evidence shows that Mr. Burton inquired about his previous complaints merely for the purpose of insulating

himself from termination.  Instead, Mr. Burton consistently inquired about his complaint against Officer Gomillion even when he was not under the direct threat of termination.  Moreover, Mr. Burton offers more than just a temporal connection as evidence that his termination was causally connected to his complaint against Officer Gomillion.  In addition to his repeated inquiries about his complaint, Mr. Burton offers as evidence of retaliation statements at a meeting that allegedly occurred in response to Mr. Burton inquiring about his complaint against Officer Gomillion.  This meeting occurred just weeks before Mr. Burton was terminated. Mr. Burton points to Assistant Chief Robinson's statement at the meeting that "none of this stuff would be happening" without Mr. Burton "aggravating" Officer Gomillion.  This statement, along with Assistant Chief Robinson's reinforcement of the at-will employee policy and making Mr. Burton read the policy despite Mr. Burton indicating that he knew it and Assistant Chief Robinson's pointing to a purportedly new policy against bickering amongst staff, all allegedly in response to Mr. Burton's inquiry, demonstrate more evidence of retaliatory intent than mere temporal proximity.

Further, defendants' stated reasons for terminating Mr. Burton have been called into question by Mr. Burton's evidence of pretext.  This Court has determined at this stage of the litigation that Officer Barham participated in the same relevant conduct as Mr. Burton under the same supervisor and standard, but Officer Barham was not terminated.  Mr. Burton is African-American and filed a complaint alleging that another officer made racially offensive remarks, while Officer Barham is Caucasian and did not.  All of this record evidence, viewed in a light most favorable to Mr. Burton, could establish that, but for Mr. Burton's filing a complaint against Mr. Gomillion and repeatedly expressing concern about Mr. Gomillion's treatment toward him, Mr. Burton would not have been terminated.

Mr. Burton has presented record evidence sufficient to create a genuine dispute of material fact as to whether the facts alleged give rise to retaliatory discharge.  On the record evidence presented, a jury could reasonably find in favor of Mr. Burton on this claim, even under the but-for causation standard.  Defendants' request for summary judgment on the retaliation claim is again denied.

### V.       Conclusion

For the foregoing reasons, the Court denies defendants' second motion for summary judgment as to Mr. Burton's claims of race discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, 42 U.S.C. § 1983, and the Fourteenth Amendment to the United States Constitution, and the Court denies defendants' second motion for summary judgment as to Mr. Burton's claims of retaliation under Title VII.

SO ORDERED this 13th day of February, 2015.

Kristine G. Baker
United States District Judge